## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                           No. CR 10-2057 JB

CODY KELLY,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Motion to Suppress All Evidence Found as a Result of Either the Warrantless Detention, Search and/or Arrest of Mr. Kelly on January 26, 2010 (Evidentiary Hearing Requested), filed August 2, 2010 (Doc. 15)("Motion"). The Court held an evidentiary hearing on September 22, 2010.  The primary issues are: (i) whether the Court should hold an evidentiary hearing; (ii) whether Defendant Cody Kelly has standing to challenge the stop and search of the vehicle in which he was a passenger; (iii) whether there was reasonable suspicion to perform a traffic stop; and (iv) whether the Court should suppress the evidence found by Albuquerque Police Department ("APD") officers who performed an inventory search of a vehicle that ultimately was not towed.  The Court grants C. Kelly's Motion in part and denies it in part.  The Court grants C. Kelly's request for an evidentiary hearing, but denies his request to suppress evidence.

## <u>FACTUAL BACKGROUND</u>

Rule 12(d) of the Federal Rules of Criminal Procedure requires the Court to state its essential findings on the record when deciding a motion that involves factual issues. <u>See</u> Fed. R. Criminal. P. 12(d)("When factual issues are involved in deciding a [pretrial] motion, the court must state its

essential findings on the record."). The findings of fact in this Memorandum Opinion and Order shall serve as the Court's essential findings for purposes of rule 12(d). The Court makes these findings under the authority of rule 104(a) of the Federal Rules of Evidence, which requires a judge to decide preliminary questions relating to the admissibility of evidence, including the legality of a search or seizure and the voluntariness of an individual's confession or consent to search. See United States v. Merritt, 695 F.2d 1263, 1269-70 (10th Cir. 1982), cert. denied, 461 U.S. 916 (1983). In deciding such preliminary questions, the other rules of evidence, except those with respect to privileges, do not bind the Court. See Fed. R. Evid. 104(a). Thus, the Court may consider hearsay in ruling on a motion to suppress. See United States v. Merritt, 695 F.2d at 1269.

1.    While on random patrol in the area of Wisconsin St. NE and Marquette Ave. NE in Albuquerque, New Mexico at approximately 9:30 p.m. on January 26, 2010, APD Officer Matthew Fisher passed a vehicle traveling in the opposition direction. See APD Supplementary Offense Report at 1 (dated January 27, 2010)(United States' Ex. 3); Transcript of Hearing at 6:5-6 (taken September 22, 2010)(Messec, Fisher)("Tr."); id. at 6:9-12 (Messec, Fisher).[1]

2.    The ambient light and Fisher's proximity to the other vehicle allowed him to observe that the occupants did not appear to be wearing their seatbelts, as the law requires. See N.M.S.A. § 66-7-372A; Tr. at 5:25-6:7 (Messec, Fisher).[2]

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

[2] While the Court need not, and does not, rely on them -- C. Kelly does not challenge the initial traffic stop -- archives of the weather information for January 26, 2010, indicate that the weather was clear, with ten mile visibility, and the moon was nearly full and high overhead at 9:30 p.m. See Weather Underground, History for Albuquerque, NM, Tuesday, January 26, 2010, http://www.wunderground.com/history/airport/KABQ/2010/1/26/DailyHistory.html?req_city=N A&req_state=NA&req_statename=NA (last visited Nov. 12, 2010).

3.      Fisher turned his patrol car around to investigate.  See Tr. at 6:15-16 (Messec, Fisher).

4.      Fisher observed the vehicle accelerate rapidly and appear to lose control while maneuvering around a traffic circle, with dirt and loose gravel coming up behind the car.  See id. at 6:20-21 (Fisher); id. at 7:7-14 (Messec, Fisher).

5.      Fisher engaged his emergency equipment and stopped the vehicle, a 2007 Hyundai Elantra with New Mexico license plate 679 PRD, as it was parking in the lot of an apartment complex located at 8201 Marquette Ave. NE.  See State of New Mexico Uniform Incident Report at 1-2 (dated January 26, 2010)(United States' Ex. 3); Tr. at 7:2-5 (Messec, Fisher); id. at 22:7-8 (Venie, Fisher).

6.      Fisher contacted the driver and owner of the vehicle, identified as Amanda Padilla, and advised her why he had stopped her vehicle.  See APD Supplementary Offense Report at 1; Tr. at 9:3-5 (Messec, Fisher).

7.      Fisher asked Padilla for her license, registration, and proof of insurance, and Padilla stated that she did not have insurance for her vehicle, because she had gotten into a fight with her aunt, who had previously been paying for the insurance.  See Tr. at 8:18-9:2 (Messec, Fisher).

8.      The vehicle contained two adult passengers, identified as C. Kelly and Jessie Kelly, and at least one child.  See id. at 8:4-9 (Messec, Fisher); id. 11:7-13 (Messec, Fisher).

9.      C. Kelly was not wearing his seat belt.  See id. at 21:9-10 (Messec, Fisher).

10.     Fisher obtained identification from all occupants of the vehicle and conducted queries of them through the FBI's National Crime Information Center.  See APD Supplementary Offense Report at 1; Tr. at 11:2-3 (Messec, Fisher); id. at 12:8-13 (Messec, Fisher).

11.     The queries revealed that C. Kelly was on parole or probation.  See id. at 12:14-19

-3-

(Messec, Fisher).

12.    Upon completing the queries of the vehicle's occupants, Fisher did not suspect the occupants of committing any specific crimes, other than Padilla's traffic violation.  See id. at 13:4-7 (Messec, Fisher); id. at 36:3-7 (Court, Fisher).

13.    Fisher did not have a warrant to search Padilla's vehicle or its contents.  See Motion at 4 ("It is undisputed that Officer Fisher lacked a warrant to stop the white Hyundai."); Response to Defendant's Motion to Suppress at 3, August 13, 2010 (Doc. 17)("Response")(not disputing this assertion).

14.    Fisher issued Padilla citations for speeding and having no insurance.  See State of New Mexico Uniform Traffic Citation 02-200-4308033-2 (dated January 26, 2010)(Defendant's Exhibit A); State of New Mexico Uniform Traffic Citation 02-200-4308034-0 (dated January 26, 2010)(Defendant's Exhibit A); Tr. at 11:17-22 (Messec, Fisher).

15.    Fisher decided to tow the vehicle for lack of insurance.  See Tr. at 10:16-11:1 (Messec, Fisher).

16.    Fisher, with the assistance of Officer James Larranaga, proceeded to conduct an inventory search of the vehicle.  See APD Supplementary Offense Report at 1; Tr. at 13:8-10 (Messec, Fisher).

17.    Fisher conducted the inventory search of Padilla's vehicle to protect Padilla's property while it would be in police custody and to protect APD against claims or disputes over lost, stolen, or vandalized property. See Tr. 13:13-14:9 (Messec, Fisher)

18.    During the search, the officers located a duffel bag in the trunk, which was on the top of all other items in the trunk.  See id. at 15:5-7 (Messec, Fisher).

19.    Fisher located a wallet in the side pocket of the duffel bag, which had a photograph

and identification in the name of C. Kelly.  See APD Supplementary Offense Report at 1; Tr. at 15:9-10 (Fisher).

20.     In the duffel bag's main compartment, the officers located a weapon made from a Stevens 12 gauge shotgun.  See APD Supplementary Offense Report at 1; State of New Mexico Uniform Incident Report at 2; Tr. at 6:11-13 (Messec, Fisher).

21.     The shotgun's barrels had been shortened or "sawed off": the barrels had been cut or filed off just in front of the wood fore grip, and the stock cut down to the pistol grip, shortening the overall length of the weapon to less than three feet.  See APD Supplementary Offense Report at 1; State of New Mexico Uniform Incident Report at 2; Tr. at 15:12-13 (Fisher).

22.     Also found were three boxes of 12 gauge shotgun ammunition, latex gloves, and a ski mask.  See id. at 1; State of New Mexico Uniform Incident Report at 2.

23.     C. Kelly placed the duffle bag in Padilla's trunk, and the duffle bag belongs to him. See Tr. at 41:2-6 (Venie, C. Kelly).

24.     Padilla was contacted and advised of the bag's contents.  See APD Supplementary Offense Report at 1-2.

25.     Padilla told Larranaga that C. Kelly had been using her vehicle and had picked her up before the police stopped them.  See id. at 2.

26.     Padilla told Larranaga that she did not have any weapons in her vehicle and that the shotgun found was C. Kelly's.  See id. at 2.

27.     The officers asked Padilla if they could retrieve the bag from her car's trunk, and Padilla advised the officers that they could.  See id. at 2.

28.     At the time the officers searched the car, Fisher reasonably believed and intended that he would tow the car.  See id. at 10:24-11:2 (Messec, Fisher); id. at 13:8-10 (Messec, Fisher).

29.     Padilla also signed a permission-to-search form. See Tr. at 16-7:13 (Messec, Fisher).

30.     Padilla repeatedly begged the officers not tow her vehicle, crying and stating that she needed the vehicle to travel to work and to transport her children. See id. at 16:13-18 (Fisher); id. at 17:12-14 (Fisher).

31.     Although Fisher had decided to tow the vehicle when Padilla admitted she did not have insurance, he changed his mind after talking with Padilla and J. Kelly, and observing Padilla's situation. See id. at 16:13-22 (Messec, Fisher); id. at 17:6-16 (Messec, Fisher).

32.     In response to Padilla's situation, and in recognition of her cooperation, Fisher exercised his discretion not to tow the vehicle. See id. at 10:16-23 (Messec, Fisher); Albuquerque Police Department Procedural Orders § 2-48-2(D)(1)(a)(1)("Any police officer may order the impoundment . . . when a vehicle is being driven unsafely under state law due to . . . [f]ailure to have insurance on the vehicle as required under state law and as documented by . . . an admission by the driver . . . ." (emphasis added)).

33.     APD policy requires officers to tow vehicles when "[t]he driver has been incapacitated, hospitalized, arrested, or when the vehicle cannot be released to a responsible party"; "[t]he vehicle has been abandoned, vandalized, involved in an accident to the extent that it is inoperable"; or "[t]he vehicle is needed for evidence processing in hit and run or other criminal investigations." APD Procedural Orders § 2-48-2(A)-(C).

34.     APD officers have discretion whether to have an individual's vehicle towed only if the driver is uninsured, unlicensed, or his or her license has been suspended, as demonstrated by the officer's search of the New Mexico Department of Motor Vehicle records or, in the case of uninsured drivers, an admission of the driver or the confirmation by the officer that the insurance company that the driver contends covers the vehicle does not cover the vehicle. See APD

-6-

Procedural Orders § 2-48-2(D).

35.     APD policy requires that officers complete a written report "whenever a vehicle is towed."  APD Procedural Orders § 2-48-1.

36.     APD policy requires that officers complete an inventory report on Tow-in Report form (PD-4012) when towing a vehicle.  See Tr. at 26:1-14 (Venie, Fisher); APD Procedural Orders § 2-48-3(c)(1).

37.     APD policy requires that officers document an inventory search as "part of their original Offense/Incident Report.  If towed, an inventory search will be conducted of the vehicle and will be documented on the Tow-in Report form."  APD Procedural Orders § 2-17-14(E).  See Tr. at 32:10-17 (Venie, Fisher).

38.     Because he did not tow Padilla's vehicle, Fisher did not complete an inventory report on the Tow-in Report from (PD-4012).  See Tr. at 22:15-21 (Venie, Fisher); id. at 24:11-18 (Venie, Fisher); id. at 26:20-25 (Venie, Fisher); id. at 27:21-23 (Venie, Fisher); id. at 31:1-5 (Venie, Fisher).

39.     The officers may have begun an inventory search form, but disposed of it when Fisher decided not to tow Padilla's vehicle.  See id. 35:4-19 (Messec, Fisher).

40.     Fisher listed the items that were removed from Padilla's vehicle on the back of the consent-to-search form.  See Tr. at 23:2-5 (Venie, Fisher); id. at 24:18-21 (Venie, Fisher).

41.     Fisher documented the inventory search in both his State of New Mexico Uniform Incident Report and his APD Supplementary Offense Report, reporting that he "decided to tow the vehicle for no insurance" and "conducted a search for inventory on the vehicle," before going on to describe the search and the materials the officers found.  APD Supplementary Offense Report at 1; State of New Mexico Uniform Incident Report at 2.

42.     Fisher listed the property seized during the inventory search in the narrative section

-7-

of both his State of New Mexico Uniform Incident Report and his APD Supplementary Offense Report, as well as under the "Additional Property" section of the State of New Mexico Uniform Incident Report.  See APD Supplementary Offense Report at 1; State of New Mexico Uniform Incident Report at 2, 4.

42.    Based upon the firearm found in the trunk, C. Kelly was arrested and charged with being a felon in possession of a firearm.  See APD Supplementary Offense Report at 1; State of New Mexico Uniform Incident Report at 2.

## PROCEDURAL BACKGROUND

On March 4, 2010, the United States District Court for the District of New Mexico issued a criminal complaint against C. Kelly for violating: (i) 18 U.S.C. § 922(g)(1), felon in possession of a firearm; (ii) 26 U.S.C. § 5861(d), possession of a weapon not registered in the National Firearm Registration and Transfer Record; and (iii) 26 U.S.C. § 5861(i), possession of a firearm not identified by a serial number.  See Criminal Complaint, filed March 4, 2010 (Doc. 1).  On March 4, 2010, the District Court also issued an arrest warrant for C. Kelly, and he was arrested on June 25, 2010.  On July 12, 2010, a grand jury indicted C. Kelly on all three counts.  See Indictment, filed July 13, 2010 (Doc. 11).

On August 2, 2010, C. Kelly filed this Motion, moving the Court, pursuant to the Fourth Amendment to the United States Constitution, to suppress the evidence that the APD officers obtained on January 26, 2010.  Specifically, C. Kelly asks the Court to suppress: (i) "all of his statements made to any police officer on January 26, 2010"; (ii) "the identification of him as a passenger in the White Hyundai"; (iii) "the contents of the duffel bag, including but not limited to, the shotgun, ammunition, wallet, identification, rubber gloves, and ski mask"; and (iv) "anything else found or seized in or around the trunk of the white Hyundai on January 26, 2010."  Motion at

10.  C. Kelly argues that Fisher lacked reasonable suspicion to stop Padilla's vehicle.  C. Kelly further argues that Fisher's search of the trunk of Padilla's vehicle did not conform with the contours of the inventory search rule and that the Court should suppress the fruit of the search.  C. Kelly contends that APD policy permits an officer to conduct an inventory search only if a vehicle is towed, and, because Padilla's vehicle was ultimately not towed, Fisher's inventory search violated APD policy and thereby the Fourth Amendment.  C. Kelly also contends that APD policy requires an officer to complete an inventory report on Tow-In Report form (PD-4012), and that Fisher violated policy by not completing the form.

On August 13, 2010, Plaintiff United States of America filed its Response.  The United States argues that the traffic stop was justified because Fisher had reasonable, articulable suspicion of multiple traffic violations.  The United States also asserts that C. Kelly has not established that he has standing to challenge Fisher's search because he has not established that he owns the duffle bag.  Even if C. Kelly has standing, the United States asserts, the search of the bag was reasonable, because it was conducted pursuant to police protocol during a valid inventory search.

On September 9, 2010, C. Kelly filed the Defendant's Reply Brief in Support of Motion to Suppress ("Reply").  See Doc. 30.  C. Kelly argues that he has standing to challenge the initial traffic stop because he was a passenger in the vehicle.  He further argues that he has standing to challenge the officers' search, because he was a passenger in the vehicle and because he will testify the duffle bag belongs to him.

At the September 22, 2010 hearing, C. Kelly testified that the duffle bag the officers found belonged to him, and that he placed it in the trunk of Padilla's vehicle.  See Tr. at 41:2-6 (Venie, C. Kelly).  He also withdrew his argument that Fisher lacked reasonable suspicion to make the traffic stop of Padilla's vehicle.  See id. at 53:1-4 (Venie)("We're not going to challenge the initial

detention the reason for pulling him over.  We're focusing our remarks solely on the inventory search and that sort of activity.").  C. Kelly conceded that APD policy provides Fisher with the discretion to decide whether to tow Padilla's vehicle, see Tr. at 65:14-15 (Venie), and that APD officers may conduct an inventory search before towing a vehicle, see id. at 65:21-66:13 (Court, Venie).

### RELEVANT LAW REGARDING FOURTH-AMENDMENT SEARCHES

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It also commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  The protections of the Fourth Amendment are enforceable against state actors through the Due-Process Clause of the Fourteenth Amendment to the United States Constitution.  See Mapp v. Ohio, 367 U.S. 643, 655 (1961); United States v. Rodriguez-Rodriguez, 550 F.3d 1223, 1225 n.1 (10th Cir. 2008)("[T]he Fourth Amendment applies against state law enforcement officials as incorporated through the Due Process Clause of the Fourteenth Amendment.").

Not all searches require a warrant.  The hallmark of the Fourth Amendment is reasonableness.  The Supreme Court of the United States has stated that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions."  Katz v. United States, 389 U.S. 347, 357 (1967) (footnotes omitted).

### 1.      Fourth Amendment Standing.

"A district court cannot suppress evidence unless the movant proves that a search implicates

Fourth Amendment interests." United States v. Jones, 44 F.3d 860, 871 (10th Cir. 1995). "[A] defendant raising a Fourth Amendment challenge must first demonstrate that he has standing to object to the search." United States v. Poe, 556 F.3d 1113, 1121 (10th Cir. 2009)(citing United States v. Rubio-Rivera, 917 F.2d 1271, 1274 (10th Cir. 1990)). "Standing requires the defendant to show 'that he had a subjective expectation of privacy in the premises searched and that society is prepared to recognize that expectation as reasonable.'" United States v. Poe, 556 F.3d at 1121 (quoting United States v. Rhiger, 315 F.3d 1283, 1285 (10th Cir. 2003)). See Smith v. Maryland, 442 U.S. 735, 740 (1979). "A Defendant has standing to challenge a search only if he or she ha[d] a reasonable expectation of privacy in the area being searched." United States v. Shareef, 100 F.3d 1491, 1499 (10th Cir. 1996). To decide whether a reasonable expectation of privacy existed, the court considers concepts of real or personal property law, keeping in mind that "arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control." Rakas v. Illinois, 439 U.S. 128, 143 & n.12 (1978). While neither ownership nor lawful possession are determinative, they are often dispositive factors; a defendant seeking to establish standing bears the burden of demonstrating "that he gained possession from the owner or someone with the authority to grant possession." United States v. Arango, 912 F.2d 441, 445-46 (10th Cir. 1990).

"For the duration of a traffic stop, . . . a police officer effectively seizes everyone in the vehicle, the driver and all passengers." United States v. White, 584 F.3d 935, 945 (10th Cir. 2009)(quoting Arizona v. Johnson, 129 S. Court. 781, 784 (2009)). "Therefore, both the driver and passenger have standing to challenge the constitutionality of the initial stop." United States v. White, 584 F.3d at 945. "A traffic stop is a 'seizure' within the meaning of the Fourth Amendment." United States v. Holt, 264 F.3d 1215, 1220 (10th Cir. 2001)(en banc). "This seizure implicates a

passenger's Fourth Amendment interests to the same degree as the driver's." United States v.
Wilson, 96 F. App'x 640, 643 (10th Cir. 2004)(citing United States v. Erwin, 875 F.2d 268, 270
(10th Cir. 1989)).  Passengers may challenge their detention during traffic stops.  See United States
v. Wilson, 96 F. App'x at 643 ("Wilson does not assert any such interest in the truck or its
contents[;] [n]evertheless, Wilson may, as he does here, 'contest the lawfulness of his own detention
and seek to suppress evidence found in the vehicle as the fruit of the illegal detention.'" (quoting
United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir. 2000); citing United States v.
Gama-Bastidas, 142 F.3d 1233, 1239 (10th Cir. 1998); United States v. Shareef, 100 F.3d at 1500).
The Tenth Circuit "reject[s] any notion that a vehicular stop detains for Fourth Amendment purposes
only the driver simply because the passenger may be free to depart." United States v. Erwin, 875
F.2d at 270.

    In the context of automobile searches, the Tenth Circuit has held the following criteria
"important[ ] though not determinative" in determining whether a defendant has standing to assert
a violation of his Fourth Amendment rights based on the search on objects inside a vehicle: "(1)
whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the
defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the
defendant presented any testimony at the suppression hearing that he had a legitimate possessory
interest in the vehicle." United States v. Parada, 577 F.3d 1275, 1280 (10th Cir. 2009)(quoting
United States v. Allen, 235 F.3d 482, 489 (10th Cir. 2000))(internal quotation marks omitted)

## 2.    **Traffic Stops.**

    "A traffic stop is a 'seizure' within the meaning of the Fourth Amendment." United States
v. Holt, 264 F.3d 1215, 1220 (10th Cir. 2001)(en banc).  Courts

assess the reasonableness of a routine traffic stop under the principles laid out for

> investigative detentions in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), considering "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."

<u>United States v. Wilson</u>, 96 F. App'x at 643 (quoting <u>United States v. Holt</u>, 264 F.3d at 1220 (quoting <u>Terry v. Ohio</u>, 392 U.S. at 20)).  The <u>Terry v. Ohio</u> framework applies whether the traffic stop is based on probable cause or reasonable suspicion.  <u>See</u> <u>United States v. Holt</u>, 264 F.3d at 1230.  A court must examine "both the length of the detention and the manner in which it is carried out," <u>United States v. Holt</u>, 264 F.3d at 1230, "keeping in mind that an officer may extend the duration and scope of the initial detention based on 'an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring,'" <u>United States v. Wilson</u>, 96 F. App'x at 643 (quoting <u>United States v. Caro</u>, 248 F.3d 1240, 1244 (10th Cir. 2001)).  "When the stop is extended based on reasonable suspicion, the further detention must, like the original traffic stop, 'be temporary, lasting no longer than necessary to effectuate the purpose of the [further detention], and the scope of the [further] detention must be carefully tailored to its underlying justification.'" <u>United States v. Wilson</u>, 96 F. App'x at 644 (quoting <u>United States v. Wood</u>, 106 F.3d 942, 945 (10th Cir. 1997)).

"A traffic stop is justified at its inception if an officer has . . . reasonable articulable suspicion that a particular motorist has violated any of the traffic . . . regulations of the jurisdiction." <u>United States v. Winder</u>, 557 F.3d 1129, 1134 (10th Cir. 2009).  "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation . . . ." <u>United States v. Williams</u>, 403 F.3d 1203, 1206 (10th Cir. 2005)(citation and internal quotation marks omitted).

**3.    <u>Inventory Searches.</u>**

An inventory search undertaken pursuant to impoundment or the authority to impound

"constitutes a well-defined exception to the warrant requirement."  Illinois v. Lafayette, 462 U.S.

640, 643 (1983).  See South Dakota v. Opperman, 428 U.S. 364, 372 (1976).  Discussing the

relationship between probable cause and inventory searches in its opinion in United States v. Griffin,

729 F.2d 475 (7th Cir. 1984), the United States Court of Appeals for the Seventh Circuit stated:

> In applying the reasonableness standard adopted by the Framers, [the] Court has
> consistently sustained police intrusions into automobiles impounded or otherwise in
> lawful police custody where the process is aimed at securing or protecting the car
> and its contents.  Thus, the justification for an inventory search does not rest on
> probable cause and the absence of a warrant is immaterial to the reasonableness of
> the search.

729 F.2d at 481 (internal quotation marks and citations omitted)(quoting Illinois v. Lafayette, 462

U.S. at 643).  "The policies behind the warrant requirement are not implicated in an inventory

search." Colorado v. Bertine, 479 U.S. 367, 371 (1987)(citing South Dakota v. Opperman, 428 U.S.

364, 370 n. 5 (1976)).  Inventory searches developed in response to three needs: (i) the need to

protect the owner's property while it remains in police custody; (ii) the need to protect the police

against claims or disputes over lost, stolen, or vandalized property; and (iii) the need to protect the

police from danger.  See South Dakota v. Opperman, 428 U.S. at 369.  Inventory searches are

allowed to insure against claims of lost, stolen, or vandalized property, and to guard the police from

danger.  See Florida v. Wells, 495 U.S. 1, 2 (1990)(citing South Dakota v. Opperman, 428 U.S. at

369).

A warrantless inventory search is proper when the search is conducted pursuant to standard

police procedures for the purpose of protecting the car and its contents.  See United States v. Lugo,

978 F.2d 631, 636 (10th Cir. 1992)("When the police acquire temporary custody of a vehicle, a

warrantless inventory search of the vehicle does not offend Fourth Amendment principles so long

as the search is made pursuant to 'standard police procedures' and for the purpose of 'protecting the

car and its contents.'")(quoting South Dakota v. Opperman, 428 U.S. at 372)).  "The policy or practice governing inventory searches should be designed to produce an inventory."  Florida v. Wells, 495 U.S. at 4 (citing Colorado v. Bertine, 479 U.S. at 376).  "[I]n forbidding uncanalized discretion to police officers conducting inventory searches, there is no reason to insist that they be conducted in a totally mechanical 'all or nothing' fashion."  Florida v. Wells, 495 U.S. at 4.  A court can consider an officer's testimony regarding the procedures and the purpose of the search as evidence.  See United States v. Lugo, 978 F.2d at 637.  A written policy concerning inventory searches is not necessary; an oral policy is sufficient to meet the standard procedure test that the Tenth Circuit articulated in United States v. Lugo.  See Molina v. Spanos, No. 98-CR-4119, 1999 WL 626126, at *9 (10th Cir. Aug. 18, 1999); United States v. Jacquez, 409 F. Supp. 2d 1286, 1298 (D.N.M. 2005)(Browning, J.)("Although there may not be a written policy concerning inventory searches, including inventory searches of unlocked containers, an oral policy is sufficient to meet the standard procedure test articulated in United States v. Lugo.").

If an inventory search is conducted pursuant to department policy, to find the inventory search unconstitutional, the officers must have acted out of bad faith, for the sole purpose of investigation.  See Colorado v. Bertine, 479 U.S. at 371 ("[T]here was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation."); United States v. Moraga, 76 F. App'x 223, 228 (10th Cir. 2003)("Inventory searches must be conducted according to standardized procedures, and the police must act in good faith and cannot search for the sole purpose of investigation.").  Inventory searches, however, "must not be a ruse for a general rummaging in order to discover incriminating evidence."  United States v. Martinez, 512 F.3d 1268, 1274 (10th Cir. 2008)(quoting Florida v. Wells, 495 U.S. at 4)(internal quotation marks omitted).  If a police officer performs an inventory search of a vehicle before

-15-

ultimately deciding not to have it towed, a court must determine "whether at the time of the inventory search [the officer] reasonably believed that the car would be towed." United States v. Henderson, 61 F.3d 906, at *3 (7th Cir. 1995)(before Posner, C.J., Cummings, J., and Ripple, J.)(table).

## RELEVANT LAW ON THE EXCLUSIONARY RULE

When evidence is obtained in violation of a person's constitutional rights, the police will be prohibited from using that evidence in a criminal prosecution of that person. See United States v. Calandra, 414 U.S. 338, 347 (1974)("Under this rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure.")(citations omitted). The police are prohibited from using evidence that is obtained as a result of a constitutional violation as well. See McDonald v. United States, 335 U.S. 451, 453 (1948). For the exclusionary rule to apply, the defendant need show, by a preponderance of the evidence, a constitutional violation, and a causal nexus between the violation and the evidence sought to be excluded. See United States v. Torres-Castro, 470 F.3d 992, 999 (10th Cir. 2006). Once the defendant makes this showing, if the prosecutor still desires to proffer the challenged evidence, the burden shifts to the prosecution to establish that some exception to the exclusionary rule applies. See id.

## ANALYSIS

The Court denies C. Kelly's motion because it finds that the evidence C. Kelly moves to suppress was obtained during a traffic stop, which was justified by reasonable suspicion, and found pursuant to a valid inventory search during a traffic stop. C. Kelly moves the Court to suppress all evidence found as a result of the warrantless detention, the search of the automobile, and/or his arrest in January 26, 2010. Fisher had a reasonable, articulable suspicion of multiple traffic

violations when he stopped Padilla's vehicle.  Fisher acted pursuant to APD policies, and, when he conducted the inventory search, Fisher had a reasonable belief that he would tow Padilla's vehicle. The Court, consequently, concludes that it will not suppress the evidence Fisher found during the inventory search.

## I.      C. KELLY HAS STANDING TO CHALLENGE HIS DETENTION AND THE SEARCH OF HIS DUFFLE BAG.

The Court finds that C. Kelly has standing to challenge the initial traffic stop and the inventory search.  As an occupant in Padilla's vehicle during the traffic stop, C. Kelly has standing to challenge his detention by Fisher.  "For the duration of a traffic stop, . . . a police officer effectively seizes everyone in the vehicle, the driver and all passengers."  United States v. White, 584 F.3d at 945 (quoting Arizona v. Johnson, 129 S. Court. at 784).  "Therefore, both the driver and passenger have standing to challenge the constitutionality of the initial stop."  United States v. White, 584 F.3d at 945.

C. Kelly also has standing to challenge the search of his duffle bag.  "The burden of proof is on the defendant to demonstrate that he has a reasonable expectation of privacy in the place searched to establish his standing."  United States v. Johnson, 584 F.3d 995, 998 (10th Cir. 2009). In the context of searching objects inside vehicles during automobile searches, the Tenth Circuit has held the following criteria "important[ ] though not determinative" to establish standing: "(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle."  United States v. Parada,  577 F.3d at 1280 (quoting United States v. Allen, 235 F.3d at 489)(internal quotation marks omitted).  While neither ownership nor lawful possession

are determinative, they are often dispositive factors.  United States v. Arango, 912 F.2d at 445-46.

Padilla told Larranaga that the shotgun was C. Kelly's.  See APD Supplementary Offense Report

at 2.  C. Kelly testified that he placed the duffle bag in Padilla's trunk, and that the duffle bag

belongs to him.  See Tr. at 41:2-6 (Venie, C. Kelly).  Because C. Kelly testified that the duffle bag

is his property at the suppression hearing, he has established an ownership and possessory interest

in the duffle bag.  Because the duffle bag was locked in the trunk of Padilla's vehicle, C. Kelly had

a reasonable expectation of privacy.  The Court finds, therefore, that C. Kelly has established

standing to challenge the officers' search of the bag.  See United States v. Parada, 577 F.3d at 1280

(stating a court considers a defendant's assertion of ownership, expectation of privacy, and

legitimate possessory interest when determining whether a defendant has standing to challenge an

officer's search of a container in a vehicle).

## II.     FISHER HAD REASONABLE SUSPICION TO PERFORM THE TRAFFIC STOP.

Fisher had a reasonable, articulable suspicion of multiple traffic violations when he stopped

Padilla's vehicle.  The parties do not dispute that Fisher had no warrant to stop Padilla's vehicle.

See Motion at 4 ("It is undisputed that Officer Fisher lacked a warrant to stop the white Hyundai.");

Response at 3 (not disputing this assertion).  C. Kelly initially argues that Fisher lacked reasonable

suspicion to stop Padilla's vehicle, in which Kelly was a passenger.  See Motion at 4.  C. Kelly

argues that it was a dark, winter night when Fisher stopped the car and that "Fisher equivocated in

his report as for the reason for the traffic stop."  Motion at 5.  C. Kelly contends "it is unclear why

Officer Fisher effectuated the initial detention of Mr. Kelly and the white Hyundai."  Motion at 5.

The United States responds that Fisher was justified in conducting the traffic stop, because he had

reasonable, articulable suspicion of three traffic violations: (i) noncompliance with the requirement

that all occupants of a moving vehicle wear safety belts; (ii) failure to control speed; and (3) careless

driving.  At the hearing, C. Kelly conceded that Fisher was justified in initiating the traffic stop.  See

Tr. at 53:1-4 (Venie)("We're not going to challenge the initial detention the reason for pulling him

over.  We're focusing our remarks solely on the inventory search and that sort of activity.").

The Court finds that Fisher was justified in stopping Padilla's vehicle because he observed

multiple traffic infractions.  "A traffic stop is justified at its inception if an officer has . . . reasonable

articulable suspicion that a particular motorist has violated any of the traffic . . . regulations of the

jurisdiction."  United States v. Winder, 557 F.3d at 1134.  See United States v. Williams, 403 F.3d

at 1206 ("[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed

traffic violation . . . ." (citation and internal quotation marks omitted)).  Fisher was justified in

temporarily detaining Padilla and her passengers because Padilla committed traffic offenses in his

presence.  See Whren v. United States, 517 U.S. 806, 808, 812-13 (1996); United States v. Patterson,

473 F.3d 767, 775 (10th Cir. 2006).  The ambient light and Fisher's proximity to the Padilla's

vehicle allowed him to observe that the occupants did not appear to be wearing their seatbelts, see

Tr. at 5:25-6:7 (Messec, Fisher), as the law requires, see N.M.S.A. § 66-7-372A.  After he turned

his car to follow Padilla, Fisher noticed that she accelerated rapidly and appeared  to lose control

while maneuvering around a traffic circle.  See Tr. at 7:7-14 (Messec, Fisher).  New Mexico law

requires drivers to "use due care and drive at a safe and appropriate speed," N.M.S.A. § 8-2-4-5, and

not to drive in "a careless, inattentive or imprudent manner, without due regard for the width, grade,

curves, corners, traffic, weather and road conditions and all other attendant circumstances,"

N.M.S.A. § 66-8-114.  Because Fisher observed traffic infractions, he had reasonable suspicion to

effect a traffic stop and temporarily detain Padilla and her vehicle.  See United States v. Williams,

403 F.3d at 1206; Whren v. United States, 517 U.S. at 808, 812-13.

Moreover, when Fisher asked Padilla for her license, registration, and proof of insurance,

Padilla stated that she did not have insurance for her vehicle.  See Tr. at 8:18-9:2 (Messec, Fisher).

Fisher also found that C. Kelly was not wearing his seat belt.  See id. at 21:9-10 (Messec, Fisher).

Fisher was thereby justified in continuing to detain C. Kelly for the duration of the traffic stop.  See

United States v. Wilson, 96 F. App'x at 644 ("When the stop is extended based on reasonable

suspicion, the further detention must, like the original traffic stop, 'be temporary, lasting no longer

than necessary to effectuate the purpose of the [further detention], and the scope of the [further]

detention must be carefully tailored to its underlying justification.'" (quoting United States v. Wood,

106 F.3d at 945)).  The Court thus finds that C. Kelly's Fourth Amendment rights were not violated

by Fisher's detaining him during the traffic stop.

## III.   FISHER ACTED PURSUANT TO APD POLICY WHEN HE PERFORMED THE INVENTORY SEARCH OF PADILLA'S VEHICLE.

C. Kelly argues that the search of Padilla's vehicle violated APD policy and consequently

the evidence that derived from the search must be suppressed.  C. Kelly argues that the officers

failed to comply with APD inventory procedures in at least two ways: (a) by failing to tow the

vehicle that was the subject of the inventory search, and (b) by not inventorying or securing the

property found within the vehicle.  See Motion at 7.  C. Kelly's first argument is that "APD policies

allow for an inventory search **only** if the car involved is towed."  Motion at 8.  By releasing the

vehicle back to Padilla after searching it, C. Kelly contends, Fisher "violated APD's policies

regarding towing and inventory searches," and any evidence from the search must be suppressed.

Motion at 9.

C. Kelly further contends that "Fisher's searching activity was not reasonable because it was

not designed to produce an inventory, and did not in fact produce one."  Motion at 8 (citing Florida

v. Wells, 495 U.S. at 4 ("[T]he policy or practice governing inventory searches should be designed

to produce an inventory,"); <u>United States v. Haro-Salcedo</u>, 107 F.3d 769, 772 (10th Cir. 1997)("[I]nventory searches are reasonable only if conducted according to standardized procedures.")).  C. Kelly argues that Fisher violated APD policy by not completing an inventory report on the Tow-in Report form (PD-4012).  <u>See</u> Tr. at 26:4-28:2 (Venie, Fisher).

The United States does not, and cannot, contest C. Kelly's factual assertion that Padilla's vehicle was ultimately not towed.  <u>See</u> Response at 6.  The United States responds, however, that APD policy does not require that a vehicle subject to an inventory search ultimately be towed.  The United States asserts that "[t]he APD policy on towing vehicles permits but does not *require* an officer to tow a vehicle for lack of insurance."  Response at 7 (citing APD Procedural Orders § 2-48-2(D)).  The United States argues:

> Officer Fisher was therefore acting within the discretion granted by APD policy when he decided to tow the vehicle and conducted the inventory search.  He was also acting within that discretion when he later reconsidered and decided not to tow the vehicle and leave its occupants, including children, out in the cold late at night.

Response at 7.  The United States also argues that an inventory report is required only when a vehicle is towed.  Because Padilla's vehicle was not towed, Fisher was not required to complete an inventory report in the Tow-in Report (PD-4012).

### A.    APD POLICY PROVIDED FISHER WITH DISCRETION WHETHER TO TOW PADILLA'S VEHICLE.

The Court agrees that Fisher acted pursuant to APD policy when he conducted an inventory search of Padilla's vehicle and that Fisher was not required to complete an inventory report on the Tow-in Report form (PD-4012).  APD policy gives officers the discretion to tow vehicles of uninsured motorists.  APD Procedural Orders § 2-48-2 governs when APD officers may tow vehicles.  The section states:

VEHICLES WILL BE TOWED WHEN

-21-

A.      The driver has been incapacitated, hospitalized, arrested, or when the vehicle cannot be released to a responsible party.  Officers will not tow if the vehicle is parked at the driver's place of residence, or his/her registered address.[3]

B.      The vehicle has been abandoned, vandalized, involved in an accident to the extent that it is inoperable, and/or is in violation of Section 8-5 or 7-5-3 of the City of Albuquerque Traffic Code and documented attempts to contact the owner have failed.

C.      The vehicle is needed for evidence processing in hit and run or other criminal investigations.

D.      Circumstances Permitting Summary Vehicle Impoundment or Relocation

    1.      Any police officer may order the impoundment of any vehicle within the municipal corporate limits, without prior notice to the owner or operator of the vehicle, when a vehicle is being driven unsafely under state law due to one of the following:

        a.      Failure to have insurance on the vehicle as required under state law and as documented by one of the following:

            1)      an admission by the driver or other occupant of the vehicle;

            2)      confirmation through the New Mexico Department of Motor Vehicle records showing a prior citation for failure to have insurance within the last six months;

            3)      confirmation by the citing officer that the insurance company that the driver claims covers the vehicle, does not in fact cover the vehicle.

        b.      Failure to have a driver's license as shown by the New Mexico Department of Motor Vehicle records; or

        c.      Driving when the driver's license has been suspended or

_____

[3] At the hearing, C. Kelly suggested that Fisher was not permitted to tow Padilla's vehicle from her apartment under APD Procedural Orders § 2-48-2(A).  The most reasonable construction of § 2-48-2(A), however, is that this section addresses only whether an officer is authorized to tow a vehicle of a driver who "has been incapacitated, hospitalized, arrested, or when the vehicle cannot be released to a responsible party," and that § 2-48-2(D) applies when a driver is uninsured.  The Court thus concludes that § 2-48-2(A) is irrelevant to the matter before the Court.

revoked as shown by the New Mexico Department of Motor Vehicle records.

2.       When towing under City Ordinance 8-5-2-4, the officer must write an Offense/Incident Report and shall articulate the manner used to confirm that the vehicle was not insured.  If an officer cannot prove that the vehicle in question is not insured, the vehicle WILL NOT be towed.

APD Procedural Orders § 2-48-2(emphasis added).

When Fisher asked Padilla for her license, registration, and proof of insurance, Padilla stated that she did not have insurance for her vehicle.  See Tr. at 8:18-9:2 (Messec, Fisher).  Pursuant to APD policy, based on Padilla's statement, Fisher had the discretion to decide whether to tow Padilla's vehicle.  See APD Procedural Orders § 2-48-2(D)(1)(d).  Additionally, under APD policy, "[o]fficers have the discretion to cancel a wrecker if circumstances so dictate."  APD Procedural Orders § 2-48-11.  The APD Procedural Orders give the examples of when a wrecker is not properly equipped for the job or if the wrecker cannot arrive within thirty minutes.  While these examples are not analogous to the circumstances of this case, § 2-48-11 states that "[o]fficers have the discretion to cancel a wrecker," and therefore cancelling a wrecker, or more generally, an officer changing his or her mind about towing a vehicle, does not necessarily violate APD policy.

Moreover, APD Procedural Orders § 2-17-14(E) states: "Officers will use the following criteria when an inventory search is conducted: . . .  The Inventory [sic] search will be documented and become part of the original Offense/Incident Report.  If towed, an inventory search will be conducted of the vehicle and will be documented on the Tow-in Report form."  § 2-17-14(E)(emphasis added).  The language of this section, therefore, provides general requirements for conducting any inventory search and additional requirements that apply if the vehicle is towed.  The provision of additional criteria for towed vehicles suggests policy envisions an inventory search

being performed without the vehicle being towed.  See § 2-17-14(E).

C. Kelly argues that the officers' discretion to tow a vehicle under APD Procedural Orders § 2-48-2 is unlimited, and that if officers may conduct inventory searches without towing an individual's vehicle, then the inventory search exception will swallow the rule, and no Fourth Amendment protections will be left for vehicles.  The United States responds that officers have discretion to tow a vehicle under only limited circumstances and that officers would only be permitted to perform an inventory search when they would be permitted to tow an individual's vehicle and perform an inventory search anyway, so allowing an officer to change his or her mind whether to tow does not change the scope of the Fourth Amendment's protections.

The Court agrees with the United States that APD policy narrowly cabins officers' authority to tow a vehicle and cabins their discretion to do so even further.  APD Procedural Orders § 2-48-2 provides four sets of narrowly defined circumstances in which officers are authorized to tow vehicles and gives officers discretion whether to tow in only one of the four.  In the other limited circumstances in which § 2-48-2 authorizes officers to tow an individual's vehicle, towing is mandatory.  Section 2-48-2 states that "VEHICLES WILL BE TOWED WHEN" "[t]he driver has been incapacitated, hospitalized, arrested, or when the vehicle cannot be released to a responsible party"; "[t]he vehicle has been abandoned, vandalized, involved in an accident to the extent that it is inoperable"; or "[t]he vehicle is needed for evidence processing in hit and run or other criminal investigations."   APD Procedural Orders § 2-48-2(A)-(C).  Under § 2-48-2(D), officers have discretion whether to have an individual's vehicle towed only if the driver is uninsured, unlicensed, or his or her license has been suspended, as demonstrated by the officer's search of the New Mexico Department of Motor Vehicle records or, in the case of uninsured drivers, an admission of the driver or if the officer confirms that the insurance company that the driver contends covers the vehicle does

not cover the vehicle.  Only § 2-48-2(D) uses discretionary language, stating that these are "Circumstances Permitting Summary Vehicle Impoundment or Relocation," and that an "officer may order the impoundment."   APD Procedural Orders § 2-48-2(D)(emphasis added). Consequently, it is only when a driver is unlicensed or uninsured that officers have discretion whether to tow a vehicle and, therefore, the discretion to change their minds to have a vehicle towed. With all other circumstances in which officers are authorized to tow a vehicle, towing is mandatory, and officers do not, therefore, have discretion to change their mind.

APD Procedural Orders § 2-48-11 provides "[o]fficers . . . the discretion to cancel a wrecker if circumstances so dictate," such as when a wrecker is ill-equipped or unable to arrive in thirty minutes.  This provision gives an officer some discretion whether to tow a vehicle under subsections 2-48-2(A) to (C), but even then, APD policy limits the officers' authority to tow an individual's vehicle to circumstances where "[t]he driver has been incapacitated, hospitalized, arrested, or when the vehicle cannot be released to a responsible party"; "[t]he vehicle has been abandoned, vandalized, involved in an accident to the extent that it is inoperable"; or "[t]he vehicle is needed for evidence processing in hit and run or other criminal investigations."  APD Procedural Orders § 2-48-2(A)-(C).  If one assumes, and the Court need not decide, that most traffic stops are going to involve traffic violations, then APD officers will not be authorized to tow vehicles in most stops.

Moreover, officers cannot perform an inventory search unless they are authorized to tow a vehicle in the first place.  Allowing an officer to change his or her mind will not expand the scope when an inventory search is permitted; rather, it will allow an officer to abort a plan to have a vehicle towed, which will produce less of an interference with an individual's rights, not more.  It makes little sense to come up with a bright-line constitutional rule that requires a further invasion of property rights and deprivation of property -- and requires towing -- when practical circumstances

change or no longer dictate relocation of a vehicle.  The Constitution should not be in conflict with common sense.  <u>Mapp v. Ohio</u>, 367 U.S. at 657 ("There is no war between the Constitution and common sense.").  If an officer decides not to tow an individual's vehicle, then the individual's deprivation of his or her vehicle is lessened because the vehicle is seized to a lesser degree than if it were towed.  Regardless, an inventory search would be permitted even if the officer were not allowed to change his mind once it was performed.  "[I]n forbidding uncanalized discretion to police officers conducting inventory searches, there is no reason to insist that they be conducted in a totally mechanical 'all or nothing' fashion."  <u>Florida v. Wells</u>, 495 U.S. at 4 (addressing whether "[a] police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself").

**B.      FISHER WAS NOT REQUIRED TO COMPLETE AN INVENTORY REPORT ON THE TOW-IN REPORT FORM (PD-4012).**

C. Kelly's argument that Fisher violated APD policy by failing to complete an inventory report is also unavailing.  APD policy does not require Fisher to complete an inventory report on the Tow-in Report form (PD-4012), because a Tow-in Report form must be complete only when a vehicle is towed, and Padilla's vehicle was ultimately released back to her.  APD policy states: "A report will be written whenever a vehicle is towed."  APD Procedural Order § 2-48-1.  Similarly, APD policy governing when an inventory report on the Tow-In Report form (PD-4012) must be completed dictates that a report is required only when a vehicle is ultimately towed.  APD Procedural Orders §§ 2-17-14 and 2-48-3 govern when an inventory report must be completed.  APD Procedural Orders § 2-17-14 states:

VEHICLE INVENTORY SEARCH

<u>When a vehicle is towed</u> pursuant to state law or city ordinance, an inventory search of the vehicle shall be conducted to protect an individual's property, the officer and

others, as well as the Department from claims of lost or damaged property resulting from the seizure of the vehicle or items.  <u>Officers will use the following criteria when an inventory search is conducted</u>:

. . . .

D.      Inventory searches will include the entire passenger compartment, glove box, trunk and containers without damaging personal property, at or near the time the vehicle was lawfully placed within police custody.  Containers found during an inventory search of a vehicle can be opened if accomplished without damage to the container and the search is conducted in accordance with the Department SOP.

E.      The Inventory [sic] search <u>will be documented</u> and become part of the original Offense/Incident Report.  <u>If towed</u>, an inventory search will be conducted of the vehicle and will be documented on the <u>Tow-in Report form</u>.

APD Procedural Orders § 2-17-14 (emphasis added).

Fisher complied with § 2-17-14.  This section requires Fisher to document the search and for the documentation to become part of Fisher's original Offense/Incident Report.  The plain language of § 2-17-14 requires that officers document the inventory search regardless of whether the vehicle is towed.  The first paragraph states that "Officers will use the following criteria <u>when an inventory search is conducted</u>," and that criteria includes that the "search <u>will be documented</u> and become part of the original Offense/Incident Report."  APD Procedural Orders § 2-17-14(E)(emphasis added).  Officers are required to complete the inventory search report on the Tow-in Report form, however, only if the vehicle is ultimately towed.  <u>See</u> APD Procedural Orders § 2-17-14(E)("<u>If towed</u>, an inventory search will be conducted of the vehicle and will be documented on the Tow-in Report form." (emphasis added)).

Fisher documented the inventory search in his police reports, as § 2-17-14(E) requires.  In both Fisher's State of New Mexico Uniform Incident Report and his APD Supplementary Offense Report, Fisher reported that he "decided to tow the vehicle for no insurance" and "conducted a

-27-

search for inventory on the vehicle," before going on to describe the search and the materials the officers found.  APD Supplementary Offense Report at 1; State of New Mexico Uniform Incident Report at 2.  Fisher listed the property seized during the inventory search in the narrative section of both reports, as well as under the "Additional Property" section of the State of New Mexico Uniform Incident Report and on the back of the consent to search form Padilla signed.  Tr. at 23:2-5 (Venie, Fisher); id. at 24:18-21 (Venie, Fisher).

APD Procedural Orders § 2-48-3 provides:

WHEN IT BECOMES NECESSARY TO TOW VEHICLES

. . . .

B.      Officers authorizing the towing of a vehicle will document the justification for the towing of the vehicle.

1.      Officers will fill out the Tow-In Report (PD-4012) and print the CAD number on the left hand margin and forward it to Records.

. . . .

C.      Officers will inventory the property in the vehicle to be towed and list it on the Tow-In Report (PD-4012).  The inventorying officer will list his/her name on the Tow-In Report.  VIN numbers will be verified prior to the towing of any vehicle.

1.      Officers will inventory the entire vehicle, including the vehicle trunk, glove box, truck bed, truck boxes and all sealed and locked containers within, except:

a.      when there is a large amount of containers to be searched which may monopolize the officer's time;

b.      when it appears that attempts to access a locked container may cause damage to the container resulting in a significant liability to the City of Albuquerque.

. . . .

E.      Officers will make arrangements to ensure that the driver and other

-28-

> occupants are not left stranded.  A relative, friend or a taxi may be called via
> Communications or by a supervisor with a Department-issued cell phone to
> have the subject(s) picked up.  Should the subjects refuse the officers efforts
> of arranging transportation, the officer must indicate such information on
> their report.

APD Procedural Order § 2-48-3.

By § 2-48-3's plain language, a Tow-In Report form is required only if the vehicle is towed.

See APD Procedural Order § 2-48-3(C)("WHEN IT BECOMES NECESSARY TO TOW

VEHICLES . . .  Officers will inventory the property in the vehicle to be towed and list it on the

Tow-In Report (PD-4012)."). See also APD Procedural Order § 2-48-1 ("A report will be written

whenever a vehicle is towed.").

C. Kelly argues that Fisher violated APD policy by not completing an inventory report on

the Tow-in Report form (PD-4012). See Tr. at 26:4-28:2 (Venie, Fisher).  Both §§ 2-17-14 and 2-

48-3 indicate that officers must complete the Tow-in Report form only if the vehicle is towed.

Under § 2-17-14, "[i]f towed, an inventory search will be conducted of the vehicle and will be

documented on the Tow-in Report form."  Section 2-48-3 applies "WHEN IT BECOMES

NECESSARY TO TOW VEHICLES."  Because Padilla's vehicle was ultimately not towed, Fisher

was not required to complete a Tow-in Report form.  "[B]ecause [the officers] initiated the inventory

search of the [vehicle] in accordance with an established [APD] policy, the failure to complete an

inventory list does not render suspect either the motive for conducting the search or the

reasonableness thereof."  United States v. Richardson, 229 F.3d 1145, at *2 (4th Cir. 2000).  See

United States v. Pappas, 452 F.3d 767, 770, 771-772 (8th Cir. 2006)(rejecting the defendant's

argument that "lack of any inventory search form makes the search in the present case not subject

to the standard procedures" where officers contended they "produced an inventory of property form

but that it was destroyed before the trial"); United States v. Garcia-Rivas, 86 F.3d 1153, at *2 (4th

Cir. 1996)(rejecting a defendant's argument "that the search cannot be upheld as an inventory search because no inventory was made or intended"); United States v. Cervantes-Gaitan, 792 F.2d 770, 772-73 (9th Cir. 1986)(same).   The Court finds, therefore, that Fisher complied with the requirements of APD's inventory search policy.

## IV.   FISHER REASONABLY BELIEVED HE WOULD TOW PADILLA'S VEHICLE WHEN HE CONDUCTED THE INVENTORY SEARCH.

The Court concludes that Fisher reasonably believed he would tow Padilla's vehicle when he completed the inventory search, and Fisher, therefore, did not violate C. Kelly's Fourth Amendment rights.   C. Kelly's central argument is that Fisher could not have performed a valid inventory search because Padilla's vehicle was ultimately not towed.   C. Kelly concedes that police may inventory a vehicle if they are going to tow it, but, C. Kelly argues, because the car was not towed, Fisher's inventory of the vehicle "did not serve to vindicate any of the administrative interests that a lawful inventory search serves, and therefore was unreasonable."   Motion at 8. Because the vehicle was not towed, C. Kelly asserts, inventorying the vehicle did not safeguard Padilla's property, or protect APD against claims of lost or stolen property.   Cf. Florida v. Wells, 495 U.S. at 10 n.2 ("The Court has recognized that an inventory search potentially can serve three governmental interests: protection of the owner's valuables, protection of the police from false claims of theft or damage, and protection of the police from danger." (citations omitted)).   The United States responds by arguing that, "[a]t the time the search was conducted, it was conducted for inventory purposes, not investigative ones."   Response at 8.   Fisher's later decision to give the driver a break, the United States asserts, does not retroactively invalidate the search, rendering a good-faith search unreasonable at the time it was performed.

The Court agrees that Fisher was not required to tow Padilla's vehicle for his search to be

valid under the Fourth Amendment.  Rather, the Court must decide whether Fisher reasonably

believed he would tow Padilla's vehicle when he conducted the inventory search.  See United States

v. Henderson, 61 F.3d 906, at *3.  Unlike other Fourth Amendment doctrines,[4] the Court takes

Fisher's intent into account when determining whether he reasonably believed he would tow

Padilla's vehicle when he performed the inventory search.  See Colorado v. Bertine, 479 U.S. at 371

("[T]here was no showing that the police, who were following standardized procedures, acted in bad

faith or for the sole purpose of investigation."); United States v. Moraga, 76 F. App'x 223, 228 (10th

Cir. 2003)("Inventory searches must be conducted according to standardized procedures, and the

police must act in good faith and cannot search for the sole purpose of investigation.").  See also

Colorado v. Bertine, 479 U.S. 367, 371 (1987)(citing South Dakota v. Opperman, 428 U.S. at 370

n. 5)("The policies behind the warrant requirement are not implicated in an inventory search.").

Inventory searches "must not be a ruse for a general rummaging in order to discover incriminating

evidence."  United States v. v. Martinez, 512 F.3d at 1274 (quoting Florida v. Wells, 495 U.S. at

4)(internal quotation marks omitted).

      In United States v. Henderson, the Seventh Circuit addressed a defendant's motion to

suppress evidence an officer gathered during an inventory search of a vehicle that ultimately was

---

[4] Under some Fourth Amendment doctrines other than inventory searches, courts apply an objective standard when assessing an officer's conduct.  See City of Indianapolis v. Edmond, 531 U.S. 32, 45 (2000)("[A]n individual officer's subjective intentions are irrelevant to the Fourth Amendment validity of a traffic stop that is justified objectively by probable cause to believe that a traffic violation has occurred"); Graham v. Connor, 490 U.S. 386, 397 (1989)("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."); United States v. Bravo, 306 F. App'x 436, 440 (10th Cir. 2009)("We do not look beyond the observed traffic violation to the subjective intent of the officer in order to determine whether the traffic stop is a 'pretext' for pursuing some other investigatory purpose.")(citing City of Indianapolis v. Edmond, 531 U.S. at 45; Whren v. United States, 517 U.S. at 809-16).

not towed.  During a traffic stop, Henderson was found to be driving without a license.  Because Henderson was the only person in the car, the officer informed him that his "car would have to be towed and that an inventory search would be necessary."  61 F.3d 906, at *1.  While performing the inventory search, the officer discovered a handgun in the trunk.  After the handgun was found, Henderson objected to having his car towed.  One of Henderson's friends arrived on the scene and agreed to contact Henderson's wife, who retrieved the car.  See 61 F.3d 906, at *1.

Henderson was arrested for being a felon in possession of a firearm.  He moved to suppress the handgun, arguing that the inventory search was a pretext for a general criminal investigation. Henderson contended "that the inventory search was pretextual because [the officer] did not produce the inventory report at trial, and the car was not impounded or towed so that the inventory search was not required."  61 F.3d 906, at *3.  The district court denied his motion, and the Seventh Circuit affirmed.  The Seventh Circuit stated that "Henderson's first argument, that an inventory report was never produced, does not prove that the inventory search was pretextual," because the officer "testified that he filled out an inventory report but lost it in a recent residential move."  61 F.3d 906, at *3.  Turning to Henderson's argument that "the car was not impounded or towed so that the inventory search was not required," the Seventh Circuit stated:

> Henderson's second argument, that the car was not towed, revises the time when the officers knew if the car would be towed.  We must analyze whether at the time of the inventory search Officer Wilson reasonably believed that the car would be towed. The later appearances of Henderson's friend and wife are irrelevant to this consideration.  Indiana Code § 9-21-16-3 provides for an automobile standing upon a highway and left unattended to be impounded.

61 F.3d 906, at *3.

The facts before the Court are analogous to United States v. Henderson.  Fisher could have towed Padilla's vehicle, but, after performing an inventory search of the car, he ultimately released

-32-

the vehicle to Padilla.  When Fisher asked Padilla for her proof of insurance, Padilla stated that she did not have insurance for her vehicle.  <u>See</u> Tr. at 8:18-9:2 (Messec, Fisher).  Because Padilla admitted she had no insurance, APD policy provided Fisher with the discretion to tow Padilla's vehicle.  <u>See</u> APD Procedural Orders § 2-48-2(D)(1)(a)(1)("Any police officer may order the impoundment . . . when a vehicle is being driven unsafely under state law due to . . . [f]ailure to have insurance on the vehicle as required under state law and as documented by . . . an admission by the driver . . . .").  Fisher decided to tow the vehicle for lack of insurance.  <u>See</u> Tr. at 10:16-11:1 (Messec, Fisher).  When a vehicle is towed, APD policy requires officers to perform an inventory search.  <u>See</u> APD Procedural Orders §§ 2-17-14, 2-48-3.  When he began the search, Fisher did not suspect the occupants of committing any specific crimes.  <u>See</u> Tr. at 13:4-7 (Messec, Fisher); <u>id.</u> at 36:3-7 (Court, Fisher).  Fisher and Larranaga conducted an inventory search of Padilla's vehicle, which led to C. Kelly's duffle bag, and the evidence C. Kelly now seeks to suppress.  <u>See</u> APD Supplementary Offense Report at 1; Tr. at 13:8-10 (Messec, Fisher); <u>id.</u> at 15:5-7 (Messec, Fisher).

Although Fisher had decided to tow the vehicle when Padilla admitted she did not have insurance, he changed his mind after talking with Padilla and J. Kelly, and observing their situation. <u>See</u> Tr. at 16:13-22 (Messec, Fisher); <u>id.</u> at 17:6-16 (Messec, Fisher).  Padilla asked the officers not tow her vehicle, stating she needed the vehicle to travel to work and to transport her children.  <u>See</u> <u>id.</u> at 17:12-14 (Fisher).  In response to Padilla's situation, and in recognition of her cooperation, Fisher exercised his discretion not to tow the vehicle.  <u>See</u> <u>id.</u> at 10:16-23 (Messec, Fisher); APD Procedural Orders § 2-48-2(D).

The Court concludes, therefore, that the officers's search was performed to inventory the contents of Padilla's vehicle before having it towed.  The Court concludes that Fisher reasonably believed he would tow the Padilla's car when he performed the search, and the mere fact that he

later changed his mind and released the vehicle back to Padilla does not render the search impermissible.  The relevant inquiry is at the time of the search, which Fisher performed in good faith to inventory the contents of Padilla's vehicle, pursuant to a reasonable belief that he would have the vehicle towed.

**IT IS ORDERED** that the Defendant's Motion to Suppress All Evidence Found as a Result of Either the Warrantless Detention, Search and/or Arrest of Mr. Kelly on January 26, 2010 (Evidentiary Hearing Requested), filed August 2, 2010 (Doc. 15), is granted in part and denied in part.  Defendant Cody Kelly's request for an evidentiary hearing is granted, but his request to suppress evidence is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Louis E. Valencia
Paige Messec
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

D. Chipman "Chip" Venie
The Law Firm of Chip Venie
Albuquerque, New Mexico

    *Attorneys for the Defendant*